**FILED**
**Jun 18, 2026**
**09:48 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Lotfi Mtiri | Docket No.     2025-80-5154 |
| v. | State File No.   6569-2025 |
| Encompass Health Rehabilitation Hospital of Memphis | |
| Appeal from the Court of Workers' Compensation Claims Shaterra R. Marion, Judge | |

---

### Affirmed in Part, Reversed in Part, and Remanded

---

The employer questions the trial court's award of medical and temporary disability benefits in this interlocutory appeal. The employee alleged he missed a step while descending a ladder, lost his balance, and struck a desk. He reported pain and symptoms in his low back and left leg. The employer initially accepted the claim as compensable and provided medical and temporary disability benefits. The authorized treating physician referred the employee to a spine specialist, who opined the employee's back and leg conditions were not primarily caused by the work incident and did not necessitate any further medical treatment. The employer then denied the claim based on causation and notice and ceased paying temporary disability benefits. Both parties sent questionnaires to the first authorized physician seeking his opinion regarding whether the employee's reported medical conditions were primarily caused by the employment. The physician provided unclear and inconsistent responses. At an expedited hearing, the employee conceded he did not give written notice of his work injury but testified he had told his supervisor about it within four days of the occurrence. The trial court found the employer had actual notice of the incident and that the original authorized physician's most recent opinion was entitled to greater weight. As a result, the court ordered the employer to provide ongoing medical treatment and reinstated temporary disability benefits from the date such benefits were terminated. The employer has appealed. Having carefully reviewed the record, we affirm the trial court's finding that the employer had actual knowledge of the reported injury; we reverse the trial court's award of additional medical and temporary total disability benefits based on the evidence presented to date; and we remand the case to the trial court.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

John Barringer and Rhoberta Orsland, Nashville, Tennessee, for the employer-appellant, Encompass Health Rehabilitation Hospital of Memphis

Lotfi Mtiri, employee-appellee, pro se

## Factual and Procedural Background

On December 26, 2024, Lotfi Mtiri ("Employee") was descending a ladder after changing a ceiling tile in the course and scope of his work for Encompass Health Rehabilitation Hospital of Memphis ("Employer") when he allegedly missed the bottom step of the ladder and struck a desk, hurting his back and upper leg. Employee continued to work for several days following his injury until he complained of cold-like symptoms and back pain on January 6, 2025, at which time his supervisor referred him to medical personnel for a COVID-19 test. The First Report of Work Injury ("C-20"), dated January 29, states Employer was first notified of the work injury on January 23, 2025. Employer authorized Employee to have a lumbar MRI at Methodist Minor Medical Center on January 31.

Employer provided Employee a panel of orthopedists, from which he selected Dr. John Lochemes. Dr. Lochemes initially evaluated Employee on February 25, 2025, for complaints of pain in Employee's left leg, including his knee, and numbness in his left thigh. Dr. Lochemes reviewed the lumbar MRI and found no significant abnormalities. He diagnosed Employee with an SI joint strain with lumbar strain, referred Employee for an MRI of his left knee, and continued Employee on anti-inflammatory medications.[1]

The MRI of the left knee was completed on March 24 and revealed no indication of a meniscal tear. In his March 31 office note, Dr. Lochemes diagnosed Employee with a muscular injury to the lumbar spine and a contusion to the left knee. He kept Employee off work and recommended a course of work conditioning. In April, Dr. Lochemes suggested a possible epidural steroid injection due to Employee's continued complaints of numbness, but Employee declined. On April 14, 2025, Dr. Lochemes stated, "I have not found anything wrong and am unsure what other treatment I have to offer. [Employee] has not worked for the past four months but is not improving with rest." He went on to say that Employee was "aware with next visit that a return to work with or without resolution of symptoms is anticipated and expected." However, on April 28, Dr. Lochemes ordered a nerve conduction study and referred Employee to Dr. Stephen Waggoner, an orthopedic surgeon.

---

[1] The only medical records entered as exhibits at the expedited hearing were two medical notes from Dr. Lochemes dated April 14 and April 28, 2025; a medical note from Dr. Stephen Waggoner dated July 10, 2025; and several medical questionnaires. Thus, we have gleaned much of the medical history of this claim from Dr. Waggoner's July 10, 2025, office note.

Dr. Waggoner first saw Employee on July 10, 2025. After completing a medical examination and reviewing medical records, Dr. Waggoner opined that Employee's lumbar condition was a "degenerative condition and not caused by the work injury . . . ." He also stated that Employee "has had extensive conservative treatment which has been medically necessary and appropriate. At this time[,] I feel he has reached maximum medical improvement. I feel he can safely return to regular duty without any restrictions." Prior to the examination, Employer forwarded a questionnaire to Dr. Waggoner in which it asked whether, to a reasonable degree of medical certainty, Employee's back pain and left thigh pain were related to the reported work injury. Dr. Waggoner responded in the negative on both counts and signed the questionnaire on the same date he evaluated Employee.

Employer issued a notice of denial on July 15 based on both lack of proper notice and Dr. Waggoner's causation opinion, and it ceased payment of temporary total disability benefits ("TTD"). Employer also sent a questionnaire to Dr. Lochemes on October 30, 2025, asking him whether, to a reasonable degree of medical certainty, Employee's back and thigh pain were related to the reported work accident. Dr. Lochemes responded in the negative on both counts and signed the questionnaire on November 4, 2025.

Employee then sent his own questionnaire to Dr. Lochemes in December 2025, asking Dr. Lochemes for the diagnosis related to Employee's work injury and the period of treatment. Dr. Lochemes responded "sacroiliac strain, numbness left anterior thigh, strain [left] knee" and "2/25/25 to 7/23/25." The second question posed to Dr. Lochemes is shown below:

2) Is it your opinion, to a reasonable degree of medical certainty, that the work incident described above contributed more than fifty percent (50%) to causing: (choose all that apply)

____ A new injury 12/26/24 (_____ 2/17/26)
____ A need for medical treatment
____ An aggravation and/or exacerbation of a pre-existing condition, disease or ailment
✓ None of the above

The questionnaire then asked if all of the treatment Dr. Lochemes provided was reasonable, necessary, and primarily related to the work injury, to which Dr. Lochemes responded by checking "Yes." It asked if Employee's work injury required continued medical treatment, and Dr. Lochemes checked "No." The remainder of the questionnaire is shown below:

5) As a result of my work injury, did you take me completely off work for any period of time?

☒ Yes  *Yes*

If "yes", please provide the period(s) of time I was completely taken off work.

_Waiting on FCE_

6) As a result of my work injury, did you recommend that I return to work with restrictions?

Yes  ☒ *No*

If "yes", please describe the restrictions and provide the period(s) of time I was to return to work under these restrictions.

_Waiting on FCE_

_Dr. Dr. John J. Lochemes_     12/17/2025     Date

Due to the unclear nature of Dr. Lochemes's answers to Employee's questionnaire, Employer sent another questionnaire to Dr. Lochemes, which he returned March 4, 2026. Employer asked Dr. Lochemes to list the diagnoses for which he was treating Employee, to which he responded, "[Left] hip, back and knee strain[,] contusion[, and] weakness." The next question asked whether Employee's "diagnosed conditions [were] ***primarily*** . . . caused by his December 26, 2004, alleged work incident, considering ***ALL*** other possible causes, and in light of your reference to findings of a genetic condition, and Dr. Waggoner's findings of degenerative changes?" (Emphases in original.) The question was followed with a box to mark "Yes" and a box to mark "No." Dr. Lochemes apparently marked the space between the two boxes, as reflected below:

2. In your expert medical opinion, and to a reasonable degree of medical certainty, are Mr. Mtiri's diagnosed conditions *primarily (i.e., more than 50%)* caused by his December 26, 2024, alleged work incident, when considering ***ALL*** other possible causes, and in light of your reference to findings of a genetic condition, and Dr. Waggoner's findings of degenerative changes?

☐ Yes
☐ No

Explanation if necessary:

_We only treated + worked up work related symptoms_

4

On the remainder of the questionnaire, Dr. Lochemes again stated Employee needed an FCE and that he would not be placed at maximum medical improvement ("MMI") until an FCE was completed.

At a March 19, 2026 expedited hearing, Employee testified he was injured while stepping down from a ladder on December 26, 2025. He testified he returned to work on December 29 and told his supervisor, Sean Hinkle, about the incident on December 30 when Mr. Hinkle asked about a belt Employee was wearing to assist him in his work due to back pain on that date. Employer questioned him at length regarding this testimony, as the petition for benefit determination ("PBD") stated Employee gave notice on January 29, 2026, and the C-20 stated he gave notice on January 23. Employer also questioned Employee about discrepancies between his testimony and his affidavit, in which he had stated:

> Reporting the injury to my supervisor – 01/06/2025 Because of the Christmas and New Year holidays, my direct supervisor was not at work in the days right after my injury, and I continued working in pain. When my supervisor returned, on January 6, 2025, I reported the accident to him and explained exactly what happened on the ladder. After that, my employer started the workers' compensation process.

During the hearing, Employee testified he told his supervisor about the accident on December 30. He also explained that the PBD reflected a January 29 notice date because that was the day he received authorization to see a doctor for his reported work injury. He initially testified that January 23, the notice date shown on the C-20, was the date that Mr. Hinkle sent him to human resources, although he then testified he could not recall the exact date that happened. During his testimony, Employee continued to reiterate that he informed his supervisor verbally on December 30 about the incident despite what any other documents indicated. He further testified he had never had any medical treatment for his back prior to this accident. Employer presented no testimony from Employee's direct supervisor at the expedited hearing.

Employer called Ms. PJ Burder as a witness to testify regarding the workers' compensation process for Employer.[2] She testified that when an employee is injured, he or she is supposed to notify his or her direct supervisor, who would then provide the injured worker with an information packet and report the incident to Employer's third-party administrator. She stated an employee can also provide notice to "multiple other people within the hospital seven days a week." She testified that, to her knowledge, Employee did not disclose any back issues after the alleged accident, and the only issue discussed on January 6 was Employee's positive COVID-19 test.

---

[2] The record does not contain Ms. Burder's specific job title or role with Employer.

Employer argued it did not have proper notice of the work injury because it did not receive written notice of the accident within fifteen days of its occurrence. It pointed out Employee had never indicated in any prior filings that he verbally reported his injury to his supervisor on December 30, 2025. Regarding the medical proof, Employer argued that Dr. Waggoner's causation opinion should be presumed correct because Employee was referred to Dr. Waggoner by Dr. Lochemes. Employer further argued that Dr. Lochemes's questionnaire responses were inconsistent and contradictory and thus, Dr. Waggoner's opinion should be given greater weight. In contrast, Employee argued he had established he would likely prevail at trial in showing that his condition was primarily caused by the work incident and that he is entitled to additional medical and temporary disability benefits.

In its April 6, 2026 interlocutory order, the trial court agreed with Employer that Employee had not given written notice as required by Tennessee Code Annotated section 50-6-201(a)(1); however, it found that Employer had actual knowledge of the injury based on Employee's testimony that he reported the accident to his supervisor on December 30. The court found Employee was credible and that he gave reasonable explanations for the inconsistencies in various records regarding when he provided notice.

The court then weighed the limited medical proof. Acknowledging that Dr. Waggoner had opined that neither condition was primarily related to the work incident, the court stated, "Dr. Lochemes did not refer [Employee] to Dr. Waggoner for treatment of his left leg." The trial court went on to note that Dr. Lochemes's opinions were entitled to a presumption of correctness, but that he completed three questionnaires and that the first two "contained contradictions and corrections." It determined the opinions contained in Dr. Lochemes's responses to the third questionnaire were the most consistent with the information contained in his medical records and were entitled to greater weight than the opinions offered by Dr. Waggoner. Thus, the court stated that Employee's back and left knee injuries "were causally related to his employment," that he was not at MMI, and that he is entitled to additional medical and TTD benefits. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of

statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

**Analysis**

In its notice of appeal and its brief, Employer raises three issues, which we restate as follows: (1) whether the trial court erred in finding Employer had actual knowledge of the accident; (2) whether the trial court erred in its assessment of the medical proof; and (3) whether the trial court erred in awarding TTD. Employee asks that we affirm the trial court's award of benefits.

*Notice*

Employer argues in its brief that the expedited hearing was the first time Employee indicated he gave verbal notice of his injury on December 30, four days after the injury. It points to Employee's affidavit, which indicates he could not report his injury any sooner than January 6 because his supervisor was off for the holidays, as well as the other purported dates of notice listed in the C-20 and Employee's PBD.

The Workers' Compensation Law states that "[e]very injured employee . . . shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury." Tenn. Code Ann. § 50-6-201(a)(1) (2025). Additionally, "[t]he notice shall be given personally to the employer or to the employer's agent or agents having charge of the business at which the injury was sustained by the employee." Tenn. Code Ann. § 50-6-201(a)(4).

Employee provided unrefuted testimony that he told his direct supervisor about his injury on December 30, and Employer's witness, Ms. Burder, acknowledged that was one of the ways in which to report an injury according to Employer's procedures. Although there are numerous contradictions in Employee's testimony and within the record, some of which were not explained at the hearing, the trial court specifically found Employee "did not waiver" in his testimony and was credible. The law is clear that "[w]hen the trial court has heard in-court testimony, considerable deference must be afforded in reviewing the trial court's findings of credibility and assessment of the weight to be given to that testimony." *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). Therefore, despite some indicia to the contrary, we are not persuaded to disturb the court's findings regarding the credibility of Employee's testimony indicating Employer had actual knowledge of the alleged accident four days after its occurrence at this stage in the litigation. *See Yarbrough*

*v. Protective Services Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 25, at *9 (Tenn. Workers' Comp. App. Bd May 27, 2016).

*Causation*

Next, Employer contends that the trial court erred in its interpretation of the questionnaires completed by Dr. Lochemes and its failure to apply a presumption of correctness to Dr. Waggoner. As we have observed many times, "[a]n employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. Instead, as reflected in the plain language of [the statute], the judge may issue an interlocutory order upon determining that the employee would likely prevail at a hearing on the merits." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). However, this lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment." *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). As such, we must review the medical proof presented by Employee in support of his claim that his back and thigh condition were primarily caused by his alleged work accident and determine if the preponderance of the evidence supports the trial court's finding that he is entitled to benefits at this stage in the litigation.

As an initial matter, we note that the court specifically determined Employee's "back and knee injuries are work related." We conclude that such a determination is premature at this interlocutory stage of the case. As we have noted previously, the appropriate determination at an expedited hearing is whether an injured worker is likely to prevail at a hearing on the merits. As such, "[i]t is inappropriate to include findings in an expedited hearing order that appear to resolve ultimate issues in a case . . . ." *Frye v. Vincent Printing Co.*, No. 2016-06-0327, 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *20 (Tenn. Workers' Comp. App. Bd. Aug. 2, 2016).

In the present case, the trial court correctly stated that Dr. Lochemes, as the authorized treating physician, has a presumption of correctness regarding causation pursuant to Tennessee Code Annotated section 50-6-102(14)(E), which provides that "the treating physician" who was "selected by the employee from the employer's designated panel" is entitled to a presumption of correctness that is rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E) (2025). However, when evaluating the medical record and questionnaire completed by Dr. Waggoner, the court did not appear to consider that Dr. Waggoner was also an authorized treating physician as of the date he saw Employee pursuant to section 50-6-204(a)(3)(E), stating: "[i]n all cases where the treating physician has referred the employee to a specialist . . . the specialist physician . . . to which the employee has been referred . . . shall become the treating physician until treatment by the specialist physician . . . concludes and the employee has been referred back to the

treating physician selected by the employee from the initial panel." Thus, even though Dr. Waggoner is not accorded a presumption of correctness on causation, he is accorded a presumption of correctness on the issue of the medical necessity of recommended treatment. *See* Tenn. Code Ann. § 50-6-204(a)(3)(H) (2025). Dr Waggoner opined all necessary medical treatment had already been provided and that Employee was at maximum medical improvement.

The first questionnaire completed by Dr. Lochemes unequivocally states that Employee's back and thigh conditions are not primarily related to the work injury. The second questionnaire completed by Dr. Lochemes contains several handwritten edits with no explanation as to the reason for the changes but, taken as a whole, indicates Employee did suffer a new injury, that all medical treatment has been reasonable and necessary, that there is no need for further medical treatment, but that Employee needs to have an FCE. Dr. Lochemes signed the third questionnaire two weeks before the expedited hearing in which he changed Employee's diagnoses from the previous questionnaire and *did not mark* whether or not these diagnoses were primarily caused by the work injury. In short, we conclude the various responses provided by Dr. Lochemes are confusing, inconsistent, difficult to interpret, and equivocal at best on the critical issue of causation.

Alternatively, Dr. Waggoner clearly stated in his medical note from July 10 that Employee's lumbar condition was not primarily caused by the work accident and was degenerative in nature. In response to a questionnaire dated that same day, Dr. Waggoner also stated Employee's thigh condition was not related to the work accident. Although the trial court found that Dr. Lochemes did not refer Employee to Dr. Waggoner for his left thigh complaints, the medical note from Dr. Lochemes on April 28, 2025 stated: "[Employee] is worsening . . . [he] continues to have numbness down the left leg. I would like to order an EMG to check the nerve in the left leg. Since his condition is worsening, I would also refer him to a surgeon." He then referred Employee to Dr. Waggoner. Thus, the records suggest that Dr. Lochemes did, in fact, refer Employee to Dr. Waggoner due, at least in part, to his left leg complaints.

Given the evidence as a whole, we conclude Employee did not meet his burden of establishing he will likely prevail at trial in proving his complaints were primarily caused by the work-related accident. We disagree with the trial court that the contradictory and ambiguous questionnaire responses provided by Dr. Lochemes, with no additional explanation of those responses, are sufficient to support a finding that Employee is likely to prevail at trial regarding causation. In contrast, Dr. Waggoner explicitly and unambiguously stated that neither the thigh condition nor the low back condition was primarily caused by the work incident. "In cases such as this one where an employer has presented expert medical proof that the employee's condition is not work-related, the employee must present expert medical proof that the alleged injury is causally related to the employment when the case is not obvious, simple, or routine." *Berdnik v. Fairfield Glade Community Club*, No. 2016-04-0328, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at

*10-11 (Tenn. Workers' Comp. App. Bd. May 18, 2017) (internal citation omitted). As Employee's proof was not sufficient, we further conclude the trial court erred in awarding additional medical and temporary disability benefits at this stage of the case.

## Conclusion

For the foregoing reasons, we affirm the trial court's finding that Employee is likely to prove at trial that Employer had actual knowledge of the incident, but we reverse the trial court's determination that Employee met his burden of proof regarding whether the work accident was the primary cause of his low back and thigh conditions to support an award of additional benefits at this time. Finally, we remand the case. Costs on appeal are taxed to Employer.